Please approach the bench. And let me apologize to my right, it's Justice Michael Murphy, not his brother. Michael's here. Good morning, Your Honor. I'm Robert Slovig. I represent the appellants. I was planning on taking ten minutes and hoping to reserve the last two for closing, if that pleases the Court. Very good. Counsel? Neil McKnight on behalf of Country Mutual. And I was thinking, we discussed with Counsel Horn about splitting up our time and giving ten to Counsel for Mr. Spann and then five for Country Mutual, but I might take a little bit more time if I could have that. That's okay. Thank you. Yes, sir. Thank you. And, Your Honor, my name is Alan Becker and I represent Michael Spann. Thank you very much. Okay. Excuse me. Thank you, Your Honor. May it please the Court, Robert Slovig for the appellants. The trial court erroneously dismissed our complaint as time barred. And that ruling was procedurally improper because the defendants had moved under Section 2619 and the facts material to the determination were contested. The trial court avoided the genuine disputes of facts by resolving inferences in favor of the moving defendants instead of in favor of the plaintiffs and their complaint. Counsel, let me just ask you a question. Isn't a statute of limitations issue a question of law and not a question of fact? No, Your Honor. Respectfully, I believe the statute of limitations defense is an affirmative defense as to which the defendant bears the burden of proving facts establishing that the action was not commenced within the time provided by law. But when the complaint was filed and the limitation period, that's pretty clear, right? So we just need to make a determination as to whether or not the statute expired. And in order to make that determination, you have to determine when the cause accrued. And that was the contested material issue of facts here because the determination of when the cause accrued depends on the plaintiff's discovery of the cause of action. And under the Indiana insurance principle, the clock on the statute cannot begin to run before the plaintiffs know or reasonably should have known that they do have a claim against the defendants. And in this case, the facts established that the Hoovers did not have the insurance policy, that Country Mutual's communications You said they did not have it? They did not have it after the fire because it burned up in the fire. And the defense has a couple of ideas about the accrual of the statute of limitations. One is that it accrued before the fire, when the Hoovers had not had a loss. The other is that it accrued at the time of the loss, at the time of the fire. How do you reconcile that with, isn't there a case named Binion, B-I-N-O-N? I don't think you cited it. I don't think I cited it in case I don't, I do not recall that one. And I'm sorry, I'm unfamiliar with the case. It basically held its time it was signed. The time the contract was signed? The problem with that is that there was no loss. The Hoovers didn't experience any damage until after the fire. And the discovery rule applies to insurance cases, despite the statute? The discovery rule applies to this insurance case because there was no way that the Hoovers could have discovered the negligent conduct of the insurance producer, Spann, until after their loss.  The company's liability on the two negligence counts, 3 and 4, is respondeat superior. Could you speak up just a little bit? I'm sorry, I don't know if this is on. The company's liability on the two negligence counts, 3 for negligent misrepresentation and count 4 for negligence, are based on the conduct of the agent and the company's liability is all in respondeat superior on those counts. The company's liability on count 1 is for bad faith conduct, which all took place at the time of the loss and after. The Hoovers were paid some money on March of 08. That's right. And then sometime around August of 08, they were then told there's no more money. That's right. And in between, they were told keep bringing in your receipts and we will keep paying. It wasn't until August they were told don't bring in any more receipts. You're not getting any more money. It was only then that the Hoovers had reason to know that the policy they had been sold in 2007 did not provide the replacement coverage they had been told that it did. It provided replacement coverage up to a stated policy limit that the company had reached and no further. But before that time, the country companies had sent them correspondence after the fire saying, you do have replacement coverage. And so what we have is a situation, and the Hoovers' affidavits specifically say this, is that they didn't know between the January fire and the August statement that we're done paying you, they didn't know the facts that give rise to this cause of action. So your best argument is they didn't know until August 08, so that's when the clocks would start running. That is exactly right. And that is what the record demonstrates. Because of that, the complaint should not have been dismissed because a fact finder can reasonably conclude on these facts that the Hoovers did not know until August of 2008 that Spann had negligently failed to get them the replacement cost coverage that he said he had gotten them. Now, the fact finder can also conclude from these facts or any other that might be in the evidence that the Hoovers did know exactly what was going on and that it was a lot sooner than they say so. But that's a factual determination and that's a credibility determination, and that was not for the trial court to make on a motion under 2-619. Of course, the defendants, our appellees, dispute the inferences that are to be drawn from these facts and the conclusions. And that, I believe, makes our point that the need for evidence and trial is apparent from the dispute as to the facts that are material to the outcome. 2-619 is appropriate when the facts allow for only one conclusion. That's what the cases say. But that's not our situation here. Other conclusions are possible and, we insist, are actually true. So the discovery rule must apply. And the fact finder, not a judge on a cold record made only of paper, has to determine when the Hoovers knew or should have known of their claim. What about the Wilson case, though? They seem to have rejected the discovery rule. I think the Wilson case is limited to its facts. I don't think it's – I think it's an apposite to this one, where we have a negligent misrepresentation by the person who procured the policy, leading the Hoovers to believe, yes, you do have the coverage, and then have the rug pulled out from under them after the loss. So I just don't think that applies here. I think Indiana insurance and the discovery rule is the more controlling principle of the law that does apply. And you're saying the insurance company is liable for what the agent represented? I am. That's the respondeat superior theory. I also want to make a point – I think it's a minor point, but out of the respect of the tortion firm for this Court that I hope is mutual, there is a point raised by one of the appellees regarding the completeness of the record. There was no report of proceedings for the motion hearing at which Judge Powell invoked – the defendants invoked 2-619, and Judge Powell agreed with them that the complaint was time-barred. There was no court reporter there, and because there was none, there is no report of proceedings for that day in the circuit court. Country Mutual has argued that we didn't give you a complete record because we didn't include that transcript. Well, contrary to that proposition, this is not an instance of an appellant omitting a required document from a record. This is an instance of nobody ordered a court reporter that day. So the record we gave you is complete, and I hope that that was clear. Unless there are further questions, I think I've made the point. This is a procedural error, and it needs to be reversed on that basis. If it pleases the Court, I'll be seated, listen to my worthy opponents, and return for a couple of minutes if they need to. Thank you very much. May it please the Court. My name again is Alan Becker, representing Mike Spann, the insurance agent. Good morning. This is not a case of what did they know and when did they know it. That's a subjective standard. The standard under the discovery rule is an objective standard. What would a reasonable person have known? And that is based on what information was available. The information, all the information that was available that the plaintiff needed to know, was first the insurance policy, the terms of the insurance policy, which the plaintiffs admit that they received when they acquired the policy prior to the fire. Under Illinois law, an insured has an obligation to read the terms of the policy. And if they had done that, and perhaps they did it, but it doesn't matter, they should have done it, they would have seen a very clear section that says limitations. And it provides that the most that the insurance company would pay would be the applicable limit of liability. Isn't this a tort action against your client? Yes, it is. Then how does the insurance policy come into it? Because the plaintiffs cannot rely on a claim that the insurance agent said something about the policy that's different from what the policy contains. They have an obligation to know what's in the policy. And they can't say, well, the- Your client represented to them the actual question, isn't it? Their claim is that my client represented that it was a replacement cost policy. It is. It provides for replacement cost. Replacement cost is how you measure the amount of damage. You don't take depreciation into account. But it's not – replacement cost isn't unlimited coverage. This policy provided for replacement cost up to a limit of liability. But they represented to them. Yeah. Isn't that what it's issued? Yeah. And all they allege is he represented that it was a replacement cost policy. And it was. And the policy terms provide for replacement cost. Was there a mutual mistake? The only error is that the insurers did not ask for enough coverage. And the- That's a question of fact. The insurer is saying that this is what we want, a full replacement cost. Right. But it's not the burden of the insurance agent to decide how much dollars you need for replacement cost. Illinois law provides that it's the duty of the insurer to know how much insurance he needs. And we've cited the cases for that in our brief. Doesn't Mr. Hoover avert an affidavit that he specifically asked for full replacement cost insurance? He has. And he got replacement cost insurance. But I'm asking you, did he make a specific request for full replacement cost insurance? And what I paid very close attention to is nobody countered that and said that's not true. That's not what he requested. Is that a question of fact, counsel? Well, that may be, but it's probably not relevant to the statute of limitations. Well, but that's the whole issue of the case now. Well, the reason, Your Honor, if I may, that it's not relevant to the- With respect to the question of negligence. When we talk about the contract and the statute of limitations, I don't think that this is an issue. He also has a specific count in this complaint which accuses Mr. Spann of negligence. Yes, that is so right, Your Honor. And there's a different limitations period for negligence action, correct? It's a two-year period. And he brings up the discovery rule, correct? That's right. And then so you have to then look at when did he have enough information to know that he had a claim. But what is of particular interest to me, counsel, is whether or not he specifically made a request for full replacement cost insurance. And you did not rebut that content, that averment in the record. No, because we're not raising that as-we did not raise that as the basis for the dismissal. We based the dismissal on the statute of limitations because the plaintiffs had all of the information they needed to have to make their claim at more than two years before they filed the claim. And this is what they had. Now, they had gotten the policy and the declaration page that showed the limit of liability back when they bought the policy, before the fire. After the fire, and these are uncontested, after the fire, they requested that Mr. Spann send a copy of the policy terms and the declaration page to their lawyer, Attorney Carlson, which he did in February of 2008, shortly after the fire. In early February, they obtained a quote from a builder as to the cost of replacement. When you put together the terms of the policy and the amount that it would cost to replace the house, you have to come to the conclusion that the policy does not provide enough coverage to replace the house, because the limit of liability under the policy is $260,000. The quote they had was $513,000. So here, more than two years before they filed suit, they had all of the information they needed. That's the objective test for the discovery rule. Now, the argument that the plaintiff has made is, well, that's what the lawyer had that information, but there's nothing in the record as to what the lawyer told us, which is true, because when we took the lawyer's deposition, he claimed attorney-client privilege. He wouldn't say what he told the plaintiffs. It doesn't matter. The law is clear that the knowledge of a person's attorney is attributed to the person. And your honors don't need to look any further than Yugoslav American Cultural Center versus Parkway Bank and Trust Company, 289 Illinois Appellate 3rd, 728, 1997 decision of this court, which made that precise ruling that the knowledge of the attorney is the knowledge of his client. So before the end of February of 2008, shortly after the fire, the plaintiffs had the policy terms. In fact, had a lawyer reading the policy. They had the policy terms, they had the policy limits, and they knew that the cost was way in excess of the policy limits. That's all that the plaintiffs needed to be able to make a claim that the agent didn't give us what we wanted when we bought the policy. Mr. Counsel, that argument is fine for the Contract Act, but what I'm most interested in is the Negligence Act, where the Hoovers specifically allege in the complaint that Spann owed them a duty to exercise ordinary care and skill in procuring an insurance policy that provided replacement cost coverage. Now, is that what they requested? And did Spann give them specifically what they requested? That's what I want you to address. Well, Spann gave them exactly what they requested. Okay. That's your contention. Yes. But I simply point out, just pointed out to you that they have birthed in an affidavit that he didn't, you didn't counter it. Because we are not moving to dismiss on the basis of a dispute as to what he requested. We've moved to dismiss on the basis of the statute of limitations. And the statute, even for this claim, there's a two-year statute of limitations. If their claim is that Mr. Spann didn't give us what we asked for, or Mr. Spann misrepresented what we asked for, they had all the information that they needed to assert that claim more than two years before they filed the claim. They maintain that the cause of action does not accrue until August, when they knew that they were not getting full replacement cost insurance. That's what they argue. But that would be a subjective standard. And the standard is not what they knew. The standard is what should they have known. And what they should have known back in February, more than two years before, is that the cost of replacement was over $500,000 and that the policy terms limited their coverage to $260,000. They had all that information more than two years before they filed the suit. Did the agent tell them before March of 08 that that's all the money they were getting was the amount they got in the first payoff? Or did the agent tend to make them think if they produced bills that there would be more money coming perhaps? The agent didn't tell them. Once the claim is made, the claim is between the insured and the claims department of the insurance company. The agent is involved in selling the policy. At the time that they went to your client and asked for full coverage, did your client owe any duty to them? No, Your Honor. The only duty he has no duty to exercise is just ordinary care? The duty of the insurance agent is a duty. He is an agent for the insurance company. He's not an agent for the insured. He's not an insurance broker. There's a distinction between an insurance broker and an insurance agent. An insurance agent is one who has an exclusive and permanent relationship with the insurance company, just as if you were an employee of the insurance company. And his duty is to the insurance company. Just as the salesman at Sears Roebuck who sells you a lawnmower is not your agent, he works for Sears Roebuck. So as an agent, would the company be responsible for any errors he made? The only obligation that he has is to submit to the company the application that's made by the insured. But the insurance agent under Illinois law does not have a duty to determine the amount of coverage that the insured needs. Doesn't the insurance code 2-2201 provide that the insurance producer, that would be your client, shall exercise ordinary care and skill in renewing or procuring a lawnmower? It provides exactly that, and that is the duty that he owes to his principal, whereas an insurance broker, who's also an insurance producer, would owe a duty to the insured. That has always been the common law. It was so held in the Zanini case by the Illinois Supreme Court. And this statute did not purport to change the common law as to who does an agent owe a duty and who does a broker owe a duty. So the insurance producer owes a duty to the insured, not to the insured. That's your position? If the insurance producer is an insurance agent, he owes the duty to the insurance company. If he's an insurance broker who's independent from insurance companies, he owes a duty to the insured. But the insurance producer does not procure insurance for the insured, does he? No, he's not. He's submitting an application that... For the insured. Right. But he's selling, he's a salesman for the insurance company when he's an insurance agent, whereas an insurance broker goes out and looks among insurance companies for a policy for his client. But to be clear now, you're saying this statutory duty of the insurance producer is owed to the insurer, not to the insured. Yes, yes, because that has always been the common law in Illinois, and this statute did not purport to change it. The statute in a further section expressly does make a change in the common law which says that the duty is not a fiduciary duty. So when the assembly wanted to change the common law, they expressly said so. But in the section as to who a duty is owed to, the assembly did not make that statement. And Plaintiff has referred to the vacated decision in the Carr case. And because that decision was expressly vacated by the Illinois Supreme Court, it has no precedential value. And on the issue of determining the amount of insurance that an insured needs, the plaintiffs have gone to the extent of citing to this Court the Decide case from California, a case that has never been cited in any jurisdiction outside of the state of California. So there's this one case in California that says that an insurance agent should determine how much insurance the client needs. That's not the law in Illinois. We've cited several cases. For that, and that Decide case has no precedential value here and certainly doesn't overrule our Illinois law. If your honors have no further questions of me, I'd like to turn this over to Mr. McKnight. Thank you. Good morning again. Neil McKnight, may it please the Court, on behalf of the Country Mutual Insurance Company. I don't want to overlap some of the arguments that are here, but I think it's critical for the Court to understand that the policy in question specifically provided for replacement cost coverage. However, as a portion of the replacement cost coverage, if the limits of insurance were not 80% of the total replacement cost, then replacement cost does not apply. And under those circumstances, what we have here at issue is not whether or not a replacement cost policy was delivered to the insurance, because it was. A replacement cost policy was delivered to the insurance. What we have here is what is a dispute over the amount of insurance that was requested. And this is where the issue comes in with respect to amount versus the type of policy. The type of policy was delivered was what was requested by the insureds. The problem came in when the insureds did not request the appropriate amount of coverage. In Illinois law, and Mr. Becker alluded to this, Illinois law requires and specifically provides that the amount of insurance  The insurer has no business in determining what the amount of insurance is appropriate for individual persons. And that duty under the Moore decision is a fiduciary obligation. The idea that a broker, for example, that represents an insured under that distinction would come to it. He has a fiduciary obligation to determine, Mr. Insured, you need a million dollars in coverage. You need $750,000. And if he goes up, that's a breach of a fiduciary duty that he owes to the individual insureds. But that duty doesn't flow from a captive agent to an individual insured, because the captive agent acts on behalf of the insurer. So even if we were to suggest that 2201 breaks down the distinctions, 2201 specifically says that there is no fiduciary duties do not apply under 2201. It's specific in language. And so under those circumstances, the only duty that can apply is ordinary care. And ordinary care, under those circumstances, is to deliver the policy requested and then leaving the duty and the determination as to the amount of insurance to be left with the individual insured. But you made a key point. You said the insurance agent has a duty to deliver the amount of insurance requested. And isn't that the issue that the plaintiffs are raising in this case? No. What the language they use is they did not say that they had a request for full replacement costs, because the Nielsen decision discusses this, and the Moore decision discusses this, because if we get into this dispute over what full means, we're going to be down this road on every single insurance case there is involving a captive insurance agent. So the idea of these amorphous terms of full or with respect to complete or those circumstances. By the way, this policy would allow for, if the limits are correct, would allow for recovery beyond the limit of the policy if it exceeds the replacement cost exceeds the limits that they've set. It only sticks into the limits under certain circumstances when it's not within this, what we'll call within the 80 percent rule, which has been well established. So under those circumstances, the insurers have the obligation to come and check and look and see what the amounts are, because the agent can't know that. But they also have a responsibility to make a request, correct? I don't know that they do have a responsibility to make a request. Well, they've got to request and make it clear to the agent what they want. They may be. Right. So they're requesting what they want. They request, and in this case, the allegations are and the averments are both in the affidavits as well as in the verified complaints that they requested. In the first circumstance, they said, enough coverage to replace my house so that I don't have to do it myself, is what is in Paragraph 7 of the amended verified complaint. And that's the same allegation in Paragraph 7 of the original complaint. And then later on, they say, we wanted full coverage. And that's the allegations later on. Never in anywhere in the record at all is there ever an averment that they said, I wanted 516 or $530,000 worth of coverage, but I only got $265,000. So it's your position they've got to request a specific amount of it. Absolutely. Because the insurance agent and the insurer are in no position to make that determination. In fact, the case law is very clear that it's incumbent upon the insured. It's their responsibility to decide how much you need. And that's important because if the insurers, and you can imagine what the circumstances might be, we'd be back in this courtroom later on because someone said, I thought he needed more insurance. And that puts a situation on captive agents under those circumstances saying, I'm going to sell you more insurance than you need because I think you need to replace this and that and down the road. So that responsibility as to specifying the dollar amount has to rest with the insured. So let me ask you this question. If an insurer made a request for full replacement cost insurance, then what would the agent conclude that he was requesting in terms of a dollar amount? What were going to be the limits of liability? Well, the limits of liability would be something that either they use as a measure with respect to the insurer, the insurance company provides it through underwriting, or it comes from a dollar figure from the insurers themselves. But once the policy is delivered, and under those circumstances, once the policy is delivered, it's incumbent upon the insurers to say, I have 265. That's not enough. I need to go back and get more. That's not the obligation of the insurer or the insurer's agent. And that's what they're trying to do here. They're trying to move our obligations outside of what's the ordinary care, and they're trying to move it outside what is 2201 as it was amended to eliminate the fiduciary obligations. What they're doing is they're saying it's negligence, but what they're saying is they're calling what is a fiduciary obligation to determine the amount of insurance, negligence as ordinary care. They've just moved it into a different category. Here's my problem, counsel. If I told an agent I wanted full replacement cost insurance, it would seem to me it would be his responsibility to say, you've got to give me a specific amount that you want. Not to just say, okay, fine, full replacement cost. I understand. And then he writes me a policy. He doesn't have a duty to tell the insurer I need a specific dollar amount. No, I don't think he does. Because he says that has got to be left to the insurer. Well, then that's my point. How does he write a policy then if there's just a request for full replacement cost insurance? And what they do is they go out and they look and they say it's a 600-square-foot house, and they do it and the underwriting guidelines are set forth by the insurer, and the insurer says I'm going to issue a policy and it's got this amount, and it's done, it's delivered. And that's when it's incumbent upon the insurer to say that's not enough or it's too much. And we get into these circumstances where if you get into a situation where you have an insurance agent deciding that issue for an insured, you're going to get cases in this courtroom where there are going to be allegations of over-insurance. I was taken. The guy gave me bad advice. I shouldn't have had this much. I have too much insurance because these people are commission-paid persons. So under those circumstances, the dollar amount, which is the only issue in this case, the only issue in the case with respect to the delivery of the policy is the limit amount. And that is a duty that rests with the individual insured. With respect to the issues regarding the statute of limitations, the limitations period as it's set forth in the policy are explicit. Illinois law is explicit, has been the case for more than 100 years, that the policy, the limitations period runs in the policy one year from the date of the occurrence. One year from the date which would move it from January 12, 2008 to January 12, 2009. There is no doubt, there is absolutely no doubt that these people, the Hoovers were advised of the one-year limitation. In fact, the letters that were issued to the Hoovers from Country Mutual specifically referenced the one-year limitation period both on February 8 and on February 22. Without ever even getting into the discussion of whether or not they received a complete copy of the policy, whether they previously had a complete copy of the policy, it's an admitted fact that as of February 8, 2008 and February 22, 2008, they're on notice that the one-year suit limitation applies. It's undisputed. Under the circumstances also, I find it problematic, and this goes to the issue of whether or not a subjective or an objective standard applies, and Mr. Becker addressed that issue with respect to contractual limitations. Attached and referenced in both the amended complaint and the verified complaint is the booklet that they received from, they alleged that they received from Country Mutual prior to another complete policy having been sent to their attorney. And if you look at Exhibit A of the verified complaint, it's got the home insurance policy on it, and it's got a page, and I don't have as big an exhibit, but they have the page, and there's a table of contents, and that table of contents lists pages, and it says page at the top, 2 through 33. The booklet itself that's attached only goes to page 15. Now, what the court doesn't have, this is the booklet. That's how it comes to you. It's a 33-page document that's got an end page, and it's got a beginning page. A reasonable person knowing and looking at that piece of paper would say, I've got, there's more here, or they got more, or it's incomplete. Under the circumstances, they'd know. So in combination with the date of the loss, in combination with the letters that were sent by Country Mutual that said, your last date of file suit is February 22nd, or January of 2009, and that was sent on February 22nd, 2008, and then ultimately the delivery of the policy to their attorney, there can be no doubt that they're on notice, and a reasonable person is on notice that the limitation period is in play, meaning they've been advised of it, they know of it, and I might add that not only did they not file suit, and it's a one-year limitation period on the contract, not only did they not file suit within the one year, despite knowing within that one year, and despite knowing within a month of that one year of what the limitations are, they didn't file within two years. They went all the way to March of 2010 before filing suit. So the contraction limitations period here is explicit. It's well established in the law. It's a requirement under the 165 lines policy, and it's binding upon the insurers with respect to their action on the policy itself. And I'll be brief with respect to the issues of those same sets of facts, of the knowledge of when the policy, meaning how much policy coverage you had, those same sets of facts, that information, and, in fact, the 80 percent rule is discussed in a February 8 letter to the insurers. Put them on notice, reasonable notice, that there is an issue here with respect to the amount of coverage. And then they talk to their attorneys, and there's still more issues with respect to the amount of coverage. And so for those reasons, the statute of limitations applies, both contractually and then under the circumstances with the negligent misrepresentation and the negligent section against the insurer, we can't be held liable for those circumstances because it's not our duty to determine the amount of insurance. And we ask that you sustain the ruling of the trial court. Thank you. Thank you, Your Honors. I will try to be brief. I still say it's a procedural problem because what facts can be determined and inferred and concluded from the facts that are before the trial court and this court are subject to different interpretations. As to the policy booklet, the record shows that Country Mutual gave the insureds a loose booklet of what purported to be the policy terms that did not contain the one-year limitation. Counsel has shown you an exemplar of the booklet today, but that one isn't in the record. So if we didn't get the one we should have, the argument that the law mandates a one-year limitation contractually does not explain how the defendants came to present the Hoovers with a booklet of policy terms that did not contain that provision. I'm sorry. I thought the facts were your clients admitted that the booklet that was given to them was accurate. Wasn't that part of discovery? There's a Rule 216 request to admit that the company's file copy of the policy for purposes of the contract claim on the policy is the policy. That is admitted. But the booklet appears to be something different altogether. It did not match the one that was on file at the company. I think it's safe to believe that the booklet is kind of a stock item that can be pulled off the shelf and brought to the insureds in a hurry after a fire. Thank you. And this one did not have that one-year limitations provision in it. So what happened to that and what the Hoovers knew or should have known about it still has to be determined by the fact finder. Justice Steele, no, I'm sorry, Justice Neville, sorry, I think you hit it on the head about the conduct of the agent that we seek to establish as negligent. Defense argues that the defendants are in no position to tell the insured what the amount of coverage should be or that they have enough. But that's exactly what the agent did. The Hoovers came in, asked for full replacement cost. The agent told them they had it, full replacement cost. He didn't get them what they requested, but he told them that he had. That's the violation of the duty of ordinary care. 2201 says that the producer's duty is not fiduciary but of ordinary care. We think that duty has to be owed to the insured and not to the agent's principal. The agent's principal at country companies, his duties there are a matter of contract. We don't think it makes sense to make them a matter of statute. We think the statute makes those duties owed to the customer, the insured. And what went wrong here is that the agent voluntarily undertook to represent to the insureds that he had gotten them a policy that provided for full replacement cost of their home and he had not. He had gotten them the policy that is, in fact, an issue that stopped after so much of the damage had been covered. The insurance company, did they not then evaluate what the home was worth and what the personal property was worth? And then they said this is the full insurance. We don't know that. I think that would be something important for the fact finder also to know is what evaluation did the carrier or the agent undertake? What appraisals did they make? What attempts to assess the value to determine the propriety coverage? How much of that was done? We think due care would send the agent out into the field to make a determination of how much insurance was necessary and to recommend it to the client. But that's not the issue before the court. What you're interested in, though, is a matter for more fulsome discovery and assessment as a matter of fact. What did occur? How did these numbers in the policy come to be arrived at by the company? Wasn't it duty of the insured put upon them when they saw the policy? We think so, yes. That the insured, by going to the agent and saying, I need a policy that will cover the full replacement costs of my house so that, unlike the first time around, I don't have to rebuild it with my own hands. They had a log home that the family built themselves. He knew as he was getting on in years he couldn't build it with his own hands again. So that's what he explained to the agent that he needed. We think that did place a duty on the agent, if he wanted to accept this business, to go make a determination of what that would cost. They're saying that the agent owed no duty of ordinary care to your client but only to the insurance company. That's what my opponents are saying. Were there any cases that would support your side? Yes. I don't think they were decided under the statute. But Dole v. Nash says, if you voluntarily undertake to represent that something is true, you have a duty not to negligently misrepresent those facts. After that one, I do think we cite some other cases in our briefs. But that one immediately comes to mind. Thank you very much, Your Honor. Thank you. We'll take this matter under advisement.